UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL DIVERSITY, et al.,

    Plaintiff(s),

vs.

LEON PANETTA, Secretary of Defense, et al.,

    Defendant(s).
                                                  /

No. C 03-4350 MHP

**ORDER RE STATUS**

In its January 24, 2008 order, Doc. No. 119, this court ordered among other matters that the case be held in abeyance "until the information necessary for evaluating the effects of the FRF [Futenma Replacement Facility] on the dugong is generated, and until defendants take the information into account for the purpose of avoiding or mitigating adverse effects to the dugong." The court also ordered defendant to submit certain other information including the anticipated environmental impact assessment being or to be performed by the Japanese government. Defendants complied with that order by the filing of a response, Doc. No. 120, on April 23, 2008.

Defendants' response addressed a number of issues including additional material to be obtained regarding the dugong, its habitat, migratory practices and other related information. The response also indicated an intention to seek comments from Japanese and non-Japanese organizations and individuals who could inform on the subject matter. In response to one of the court's questions defendants stated that "the Government of Japan currently is conducting surveys to gather information of the FRF's impact on the dugong and its habitat as part of its environmental

assessment process." Defendants elaborated further on the nature of the studies being performed by Japan and responded to the court's question of whether this assessment would satisfy, in part, defendants' obligations under the National Historic Preservation Act ("NHPA").

Since that time this action has been kept in abeyance with periodic reporting and, most recently, in the fall of 2011, statements were filed regarding the future of further proceedings. The parties' submissions since the time of the 2008 order through the most recent submissions differ with respect to the next steps to be taken by the court. Defendants have requested an order of remand as spelled out in their proposed order submitted on December 22, 2008, Doc. No. 134-1. Plaintiffs, on the other hand, ask the court to set forth the procedures necessary for defendants to satisfy their "take into account" obligations under the NHPA.

The court has not undertaken to fill either of these requests. Each request is premature for the same reason: they request the court to offer an advisory opinion either by, in the former case, telling the defendants what they must do thereby suggesting that compliance with those instructions will satisfy their obligations, or, in the latter case, offering an opinion as to what defendants must do to satisfy their obligations. The reason the court finds this effort is premature or not ripe is that the matters to be considered by defendants and then by the court are far from finalized.

The September 8, 2011 joint statement acknowledges that the final environmental impact assessment by the Japanese Government has not been completed. That is a critical part of the inquiry that defendants must take into account. It now appears from the Department of Defense ("DOD") website and news reports in Japanese (English editions) and U.S. newspapers that the report was completed at the end of the year and forwarded to the Okinawa Prefecture which has ninety days to issue an opinion. It is far from clear what that opinion will be and what effect that opinion may have on the ultimate assessment as well as the decision on how, when and the extent to which the replacement facility will proceed. According to the DOD reports, unlike earlier agreements between the U.S. and Japan, recent negotiations have resulted in the de-linking of the FRF and transfer of troops to Guam. Although the most recent statement from the two parties reads, "We remain committed to mitigating the impact of U.S.forces on Okinawa, as well as to the

2

1 construction of the Futenma replacement facility at the Camp Schwab Henoko-saki area and
2 adjacent waters", http://www.state.gov/r/pa/prs/ps/2012/02/183542.htm, there appear to be multiple
3 roadblocks to these efforts.
4     It may be that the actions taken by the Okinawa Prefecture will require some change of
5 plans.
6 In fact, The Japan Times, in an article dated February 10, 2012, reports that "[a]n Okinawa
7 Prefectural Government panel has concluded that building a new airfield in Nago to relocate the
8 U.S. Futenma base would destroy the natural environment and make the area uninhabitable." The
9 article continues that Okinawa Governor Nakaima is "expected to tell the government [of Japan] that
10 the Futenma base, currently located in Ginowan, should be moved outside the prefecture [Okinawa]
11 and stress that its relocation to Henoko is virtually impossible in light of strong local opposition".
12 Further, the head of the panel said that the prefectural government is expected "'to respect the report
13 in deciding whether to permit reclamation work' in the Henoko area".
14 http://www.japantimes.co.jp/print/nn20120210a5.html.
15     The Daily Yomiuri reported on January 30, 2012, that the Henoko reclamation project is on
16 the "back burner" and provides the Japanese Government's schedule for relocation as follows:

| | Government's schedule for relocation of Futenma Air Station |
|---|---|
| Dec. 28, 2011 | Defense Ministry submits environmental impact assessment report to Okinawa prefectural government |
| By March 27, 2012 | Okinawa governor to submit opinion on reclamation to Defense Ministry |
| May 15 | Prime Minister Yoshihiko Noda to visit Okinawa to attend ceremony marking 40th anniversary of its reversion to Japan |
| End of May | Defense Ministry to finish revising environmental impact assessment report based on governor's opinion |
| June 10 | Okinawa Prefectural Assembly election |
| Summer | Defense Ministry to ask prefectural government for permission to reclaim land |
| End of December | Govt to ask governor to permit reclamation during budget compilation |
| Early January 2013 | Governor to permit reclamation |

27 *See* http://www.yomiuri.co.jp/dy/national/T120129003314.htm

It is also clear from the U.S. Government's perspective there are problems with the burgeoning costs of the construction, thus suggesting a smaller footprint than was contemplated. Section 2207 of The National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, 2011 H.R. Conf. Rep. No. 1540, December 31, 2011, 125 Stat.1298, requires submissions from the Secretary of Defense with respect to plans for construction of facilities and infrastructure pursuant to the plan for realignment of Marine Corps forces from Okinawa to Guam. It also requires certification by the Secretary of the "tangible progress" being made on the relocation of the Air Station at Futenma. Until these submissions and other responses required by the Act are complied with no funds authorized by the Act may be obligated to implement the realignment. What is clear from the Act and its legislative history is that some members of Congress are concerned with the "massive, multi-billion dollar undertaking, requiring extensive landfill, destruction and relocation of many existing facilities and, in a best-case scenario, several years of effort" that pursuing the Henoko option could involve. *See* Press Release re Report and Recommendations of Senators Webb, Levin and McCain on behalf of the Senate Committee on Armed Forces Personnel Subcommittee and the Senate Committee on Foreign Relations East Asian and Pacific Affairs. http://webb.senate.gov/newsroom/ pressreleases/05-12-2011-01.cfm.

The court notes that at the end of January of this year Lt. Gen. Duane Thiessen, the U.S. Marines Corps Forces Commander in the Pacific asked the Secretary General of the Democratic Party of Japan in Okinawa to propose alternative locations where Futenma can be relocated "more cheaply than to Henoko". *See* http://mdn.mainichi.jp/mdnnews/news/20120205p2g00m0dm016000c.html.

The court recognizes that some of the foregoing are from sources generally considered inadmissible under the Federal Rules of Evidence. Nonetheless, when taken together they do raise serious questions about where the FRF plans stand and whether they may, in fact, be modified, significantly cut back or abandoned. The court should not venture into offering opinions, instructions or otherwise weighing in when plans are not solidified and, perhaps, even tenuous.

/////

/////

In view of the foregoing, this action remains in abeyance and the Clerk of Court is instructed to administratively close the file. When plans for Henoko become more finalized or are abandoned, the parties may seek reopening of the proceedings by letter without the necessity of a motion.

IT IS SO ORDERED.

Date: February 10, 2012

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

5